**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SYSTEM TWO SECURITY, INC.,

        *Plaintiff*,

        *v.*

AARON MOG,

        *Defendant*.

Case No. ___1:26-cv-5540___

## COMPLAINT

This is an action by Plaintiff System Two Security, Inc. ("STS" or "Plaintiff") to recover damages under the Anticybersquatting Consumer Protection Act, obtain injunctive relief in aid of arbitration on its common law claims, and obtain an order transferring a domain name unlawfully registered and held from STS by Defendant Aaron Mog ("Mog" or "Defendant"), a former employee of STS. With respect to its common law claims arising from the Employee Confidentiality & Inventions Agreement executed by Mog as a condition of his employment (the "Invention Agreement"), STS seeks only preliminary injunctive relief from this Court, as permitted by Sections 16 and 18 of the Invention Agreement, while reserving all other claims and remedies for binding arbitration pursuant to Section 18. In support of its claims, STS alleges as follows:

## INTRODUCTION

1.      STS seeks injunctive relief in aid of arbitration to protect itself from irreparable harm caused by Mog, its former Field Chief Information Security Officer, who has refused to return STS's property following his termination and is attempting to extort STS by holding hostage STS's domain name and demanding payment of up to $450,000 for its return, in violation of his contractual and common law obligations to STS. The Invention Agreement between STS and Mog

requires binding arbitration of all disputes but expressly permits STS to seek injunctive relief in any court of competent jurisdiction.

2. As a condition of his employment, Mog executed the Invention Agreement that assigned to STS all intellectual property developed during his employment, prohibited disclosure of confidential information and passwords, and required the return of all company materials upon termination. Mog expressly agreed that STS would be entitled to injunctive relief in the event of any violation of the Invention Agreement, and further agreed that "[n]otwithstanding Section 18," which requires binding arbitration, "a claim for equitable relief arising out of or related to this Agreement may be brought in any court of competent jurisdiction."

3. Despite these obligations, following his termination on May 5, 2026, Mog refused to return STS's Domain Name and related credentials, and instead demanded up to $450,000 from STS for transfer of its own property. Mog's conduct constitutes a blatant disregard of his contractual, fiduciary, and common law obligations to STS and has caused, and will continue to cause, substantial, immediate, and irreparable harm to STS. STS therefore brings this action for injunctive relief in aid of arbitration on its common law claims, and for all available relief on its federal statutory claim.

## THE PARTIES

4. STS is a Delaware corporation with a principal place of business in San Francisco, California.

5. Mog is an individual who, upon information and belief, resides in Buffalo Grove, Illinois.

**JURISDICTION AND VENUE**

6. Through this Complaint, STS asserts claims against Mog that arise under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*.

7. Jurisdiction over the common law claims are also appropriate under 28 U.S.C. § 1367(a) because those claims are substantially related to the federal Lanham Act claims.

8. The Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as 15 U.S.C. § 1121(a) because Plaintiff's claims arise under the Lanham Act, 15 U.S.C. § 1051, *et seq*.

9. With respect to the common law claims asserted in Counts II through IV herein, this Court has jurisdiction to grant injunctive and equitable relief pursuant to Sections 16 and 18 of the Invention Agreement, which expressly authorize STS to seek injunctive relief in any court of competent jurisdiction notwithstanding the parties' agreement to arbitrate disputes before JAMS.

10. The Court has personal jurisdiction over Defendant in that Defendant resides in this State; transacts business in this State; and has substantial contacts with this State.

11. Venue is proper in the United States District Court for Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this judicial district and because, under 28 U.S.C. §§ 1391(b)(2)-(3), a substantial part of the events giving rise to the claims herein occurred in this judicial district, and Defendant is subject to the Court's personal jurisdiction for the claims alleged herein.

## FACTS

A. *STS's Employment of Mog*.

12.     Founded in 2023, STS provides a variety of services in the field of cybersecurity, including tools for detecting, identifying, and rectifying online and cyber threats.

13.     On or about September 25, 2024, STS hired Mog as STS's Field Chief Information Security Officer.

14.     As STS's Field Chief Information Security Officer, Mog served in a senior external-facing role representing the company to customers, partners, prospects, and the broader cybersecurity community, including helping grow and promote STS's DETECTIONS.AI community presence and brand initiatives.

15.     Mog also provided strategic input regarding STS's products, platform capabilities, and market positioning.

16.     Pursuant to Section 1 of the Invention Agreement, Mog agreed to "devote [his] best efforts to the interests of" STS and further agreed not to "engage in any activity that is competitive with" STS.

17.     On or about September 25, 2024, Mog and STS signed Mog's Employment Offer agreement in which Mog agreed to be an at-will employee of STS.  A copy of the Employment Offer agreement is attached as **Exhibit A**.

18.     The same day, Mog and STS signed the Invention Agreement. A copy of the Invention Agreement is attached as **Exhibit B**.

19.     The Invention Agreement states that all "Proprietary Information," which includes all confidential or proprietary, technical or nontechnical information" of STS, is the sole property of STS.

20. The Invention Agreement also prohibits the disclosure of Proprietary Information by Mog to third parties.

21. Furthermore, the Invention Agreement prohibits the disclosure of any password or key by Mog to any third party.

22. The Invention Agreement also provides that during Mog's employment and after the termination thereof, Mog agreed not to disparage STS, its products, services, agents, employees, officers, directors, or affiliates.

23. The Invention Agreement also assigns from Mog to STS all:

discoveries, designs, developments, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), trade secrets, know-how, ideas (whether or not protectable under trade secret laws), mask works, trademarks, service marks, trade names and trade dress.

24. The Invention Agreement requires that Mog, upon termination of his employment, "return all materials" to STS.

25. The Invention Agreement provides for injunctive relief, specific performance, and other relief that is proper. Specifically, the Invention Agreement provides that if Mog violates the Invention Agreement, STS "will suffer irreparable and continuing damage for which money damages are insufficient" and that STS "shall be entitled to injunctive relief and/or a decree for specific performance, and such other relief as may be proper (including money damages if appropriate), to the extent permitted by law."

26. Pursuant to Section 18 of the Invention Agreement, all controversies, disputes, or claims arising out of or relating to the Agreement, or Mog's employment with STS, are subject to binding arbitration administered by JAMS pursuant to its Employment Arbitration Rules & Procedures. However, Section 18 further provides that "System Two Security may apply to any

court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or a conservatory relief, as necessary, without breach of this arbitration agreement and without abridgement of the powers of the arbitrator."

27.     Mog further agreed in the Invention Agreement that his employment was on an "at-will" basis and that STS could terminate his employment at any time, with or without cause and with or without notice.

28.     Accordingly, with respect to Counts II through IV below, STS seeks only injunctive and equitable relief from this Court as authorized by Sections 16 and 18 of the Invention Agreement. STS reserves all claims for monetary damages arising from the Invention Agreement for binding arbitration before JAMS.

B.  *STS's Development of the DETECTIONS.AI Trademark and Brand*.

29.     In or around November 2024, STS – together with Mog as a company officer – developed the ides for a new brand named DETECTIONS.AI.

30.     On November 11, 2024, in furtherance of the development of STS's DETECTIONS.AI brand, Mog registered the www.detections.ai domain name (the "Domain Name") though the registrar Go Daddy and created and maintained the username and password to access the Go Daddy account that held the Domain Name. A WHOIS report, attached as **Exhibit C**, confirms the Domain Name was registered on November 11, 2024.

31.     Mog was an officer and employee of STS when he registered the DETECTIONS.AI trademark and advised STS he registered the Domain Name.

32.     In or around March 6, 2025, STS created a website appearing on the Domain Name which advertised the DETECTIONS.AI trademark and services offered thereunder.

33. On or about March 6, 2025, Mog pointed the domain name servers ("DNS") for the Domain Name to STS's website so visitors to the Domain Name would resolve to a website for STS's DETECTIONS.AI branded business, as shown by the following message from Mog:



34. From March 6, 2025 to approximately April 2026, STS created and updated the website at the Domain Name without incident.

35. On or around June 24, 2025, STS publicly released the website appearing on the Domain Name which advertised the DETECTIONS.AI trademark and services offered thereunder.

36. From June 24, 2025 to approximately April 2026, STS created and updated the website at the Domain Name without incident.

37. STS employees adopted and used (and to this day continue to use) email addresses related to the Domain Name such that STS's email addresses read "@detections.ai."

38. In addition, the Company registered and advertises its businesses through a LinkedIn account named DETECTIONS.AI, which account has more than 9,400 followers. A true and correct printout of the public-facing DETECTIONS.AI LinkedIn page is attached as **Exhibit D**.

39. In addition, the DETECTIONS.AI trademark has been discussed in various media.

40. For instance, the DETECTIONS.AI trademark was featured in the April 29, 2026 "CyberBites" podcast, which has more than 22,000 views in nearly two weeks. *See* CyberBytes:

7

The Podcast, *Why Detection Engineering Is Ready for Reinvention - detections.ai* (YouTube, Apr. 29, 2026), *https://www.youtube.com/watch?v=OVHoN0U1_ck&list=PLcuPi7wDfadbKpyWmUFCFSmLU U-H1tq7J&index=2.*

41. The DETECTIONS.AI trademark is inherently distinctive.

42. Alternatively, due to STS's use and advertisement of the DETECTIONS.AI trademark, STS has acquired distinctiveness in the DETECTIONS.AI and consumers associate this mark exclusively with STS and its services.

43. Therefore, STS has established common law trademark rights in the DETECTIONS.AI trademark.

C. ***Mog's Termination from STS and Withholding of STS's Domain Name***.

44. In early May 2026, following escalating leadership and operational disagreements, STS's Board of Directors decided to terminate Mog's employment pursuant to the parties' at-will employment relationship.

45. On May 5, 2026, STS terminated Mog's employment.

46. Following his termination, STS requested Mog provide the username and password to access the Domain Name.

47. Mog refused and, referencing the Domain Name and DETECTIONS.AI brand, said he was willing to "burn it to the ground" or "bring it to a competitor."

48. Mog also told STS's Chief Executive Officer, "you should have known better Robert. You know I like to buy domains."

49. Mog also stated in a May 5, 2026 email he "created and drove much of [the] work" related to the DETECTIONS.AI trademark and brand, "including providing the brand and domain." A copy of Mog's May 5, 2026 email is attached as **Exhibit E**.

50. He claimed the Domain Name was owned by a different entity but, nevertheless, offered to transfer the Domain Name STS in "a one-time acquisition under a fair agreement that reflects the asset's strategic importance, current use, user base, and replacement risk."

51. Two days later, Mog stated by email that any offer to sell the Domain Name was separate from any discussion of proposed severance in connection with the termination of his employment, offering to sell the Domain Name to STS for $375,000:

> **detections.ai Domain**
>
> The detections.ai domain is owned by a separate legal entity and is not part of my employment separation.
>
> If the company wants to acquire the domain, the purchase price is **$375,000**.
>
> I will provide a domain purchase agreement and invoice. Once payment is received, the domain will be released/transferred according to the agreement.

A copy of Mog's May 7, 2026 email is attached as **Exhibit F.**

52. When STS did not respond to Mog's offer to sell the Domain Name for $375,000, on May 9, 2026, Mog increased his offered sale price for the Domain Name to $450,000:

> The detections.ai domain is owned by a separate legal entity. It was not part of my employment. It will not be transferred to S2S without fair compensation.
>
> At this point, I am no longer interested in negotiating severance as a separate matter. The clean path forward is for S2S to acquire the detections.ai domain and related rights through a one-time commercial purchase.
>
> The cost is $450,000. This price is good until Sunday.

A copy of Mog's May 9, 2026 email to STS is attached as **Exhibit G**.

9

53. That same day, Mog sent an email to STS's advisors, investors, and potential customers with the ominous title "End of detections.ai":

**Fwd: End of detections.ai**

A copy of Mog's May 9, 2026 email to STS's advisors, investors, and potential customers is attached as **Exhibit H**.

54. One more time, on May 11, 2026, STS attempted to reach an amicable resolution via email.

55. Instead, Mog, claiming he was "the domain owner's authorized representative" again demanded $450,000 for "a one-time acquisition of detections.ai":

As the domain owner's authorized representative, my position is final: **$450,000** and a one-time acquisition of detections.ai.

A copy of the May 11, 2026 email chain between STS and Mog is attached as **Exhibit I**.

### COUNT I
### (Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))

56. STS restates and realleges paragraphs 1 - 55 as if fully restated here.

57. STS's DETECTIONS.AI trademark was distinctive at the time the Domain Name was registered and protectable within the meaning of 15 U.S.C. § 1125(d)(1)(A)(ii)(I).

58. The Domain Name is identical to STS's DETECTIONS.AI trademark.

59. Mog registered, trafficked in, or used the Domain Name by: (a) Mog registering the Domain Name in a name or entity other than STS when he was an STS employee; and/or (b) offering to sell the Domain Name, which is comprised of STS's DETECTIONS.AI trademark, to STS or a third party for financial gain.

10

60.     Mog has profited, or will profit, in bad faith from the unauthorized registration, trafficking, or use of the Domain Name by, for example, obtaining money from the sale of the Domain Name or using the Domain Name, which is confusingly similar to STS's DETECTION.AI trademark.

61.     The unauthorized registration, trafficking, or use of the Domain Name by Mog must be enjoined to prevent further irreparable injury to the substantial and valuable goodwill associated with STS's DETECTION.AI trademark and to prevent confusion among the public.

62.     STS's unauthorized registration, trafficking, or use of the Domain Name was intentional and willful.

63.     STS has suffered damages and monetary losses and requests in an amount up to $100,000 as provided under 15 U.S.C. § 1117(d).

64.     In addition, STS seeks recover of its attorneys' fees given the exceptional nature of this case under 15 U.S.C. § 1117(a)

## COUNT II
### (Breach of Contract – Common Law)

65.     STS restates and realleges paragraphs 1 - 64 as if fully restated here.

66.     STS and Mog were parties to the Invention Agreement.

67.     The Agreements are valid and enforceable under Illinois and California law.

68.     STS performed all its obligations under the Invention Agreement.

69.     If the Domain Name is owned by Mog, Mog breached the Invention Agreement by retaining post-termination the Domain Name, a "development," "information fixed in a tangible medium," and "know-how."

70. If the Domain Name is owned by Mog, Mog breached the Invention Agreement by retaining post-termination "materials" it was required to return, including the Domain Name and the username and password to access it.

71. In the alternative, if the Domain Name is owned by a third party, Mog breached the Invention Agreement by disclosing Proprietary Information to said third party, including the username and password for the account to access the Domain Name.

72. As a direct and proximate result of Mog's breach, STS has suffered and will continue to suffer immediate and irreparable harm. The damage to STS includes, but is not limited to, loss of the secrecy of the protected information, loss of control of the Domain Name, potential lost business opportunities, diminished goodwill, and a disadvantaged market position. Money damages are insufficient to remedy these harms, and STS is entitled to injunctive relief and specific performance as provided in Sections 16 and 18 of the Invention Agreement. STS reserves all claims for monetary damages for binding arbitration before JAMS.

### COUNT III
**(Conversion – Common Law)**

73. STS restates and realleges paragraphs 1 - 72 as if fully restated here.

74. STS is the legal and beneficial owner of the Domain Name.

75. Mog assumed ownership, dominion, or control over STS's Domain Name wrongfully and without STS's authorization.

76. STS has a right to the Domain Name.

77. STS has a right to immediate possession of the Domain Name.

78. STS demanded Mog provide the Domain Name, and Mog refused.

79. Mog profited, or will profit, from the unlawful ownership, dominion, or control of STS's Domain Name.

80.     Mog's unauthorized ownership, dominion, or control of the Domain Name must be enjoined to prevent further harm to STS.

81.     STS requests temporary and permanent injunctive relief.

82.     STS seeks only injunctive and equitable relief from this Court on this claim and reserves all claims for monetary damages for binding arbitration before JAMS.

## COUNT IV
### (Breach of Duty of Loyalty – Common Law)

83.     STS restates and realleges paragraphs 1 - 82 as if fully restated here.

84.     At all relevant times during and after his employment with STS, Mog, as STS's Field Chief Information Security Officer, occupied a position of trust and confidence and owed a duty of loyalty to STS. Mog was obligated to act in the best interests of STS and not to engage in any conduct that might subvert its best interests.

85.     Mog breached his duty of loyalty to STS by, among other things: (a) registering the Domain Name in a name or entity other than STS; (b) refusing to return STS's property upon termination; (c) attempting to extort STS by demanding up to $450,000 for return of the Domain Name; and (d) leveraging his position of trust to withhold access to STS's critical business assets for personal financial gain.

86.     Mog's conduct, as described above, has caused STS irreparable injury and, unless enjoined, will continue to cause irreparable injury to STS's business including, but not limited to, loss of goodwill, reputation, client relationships, competitive position, revenues and profits, that is impossible to accurately and fully calculate, and for which STS has no adequate remedy at law.

87.     As a direct and proximate result of Mog's breach of his duty of loyalty, STS has suffered, and continues to suffer, immediate, irreparable, and unquantifiable damages. STS seeks

13

only injunctive and equitable relief from this Court on this claim and reserves all claims for monetary damages for binding arbitration before JAMS.

## **PRAYER FOR RELIEF**

WHEREFORE, STS respectfully requests that this Court:

A.    enter judgment in STS's favor and against Mog;

B.    enter an injunction ordering the transfer of the Domain Name to STS pursuant to 15 U.S.C. § 1125(d)(2)(D)(i);

C.    an injunction ordering the registry of the Domain Name to change the registrar of record for the Domain Name to a registrar of STS's selection, pursuant to 15 U.S.C. § 1125(d)(2)(D)(i);

D.    an order pursuant to 15 U.S.C. § 1117(a) that this is an exceptional case and awarding STS its reasonable attorneys' fees;

E.    an order pursuant to 15 U.S.C. § 1117(a) awarding STS all of its costs, disbursements, and other expenses incurred due to the unlawful conduct at issue;

F.    with respect to its ACPA claim, award STS's actual, compensatory, and consequential damages, including any and all unjust enrichment received by Mog in view of its breach of contract;

G.    award STS's market value of the property plus legal interest;

H.    enter an order directing Mog to immediately return to STS any and all of STS's Proprietary Information, company materials, documents, equipment, and other property that is in his possession, custody, or control, including, but not limited to, the Domain Name and all usernames and passwords associated therewith; and

I.    award STS any other relief the Court finds proper.

Dated: May 13, 2026

Respectfully submitted,

*/s/ Michael A. Geller*

Michael A. Geller
Eric M. Roberts
Jacob R. Clubb
DLA Piper LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606
T 312.368.4000
F 312.251.2187
E michael.geller@us.dlapiper.com
E eric.roberts@us.dlapiper.com
E jacob.clubb@us.dlapiper.com

*Counsel for Plaintiff*
*System Two Security, Inc.*